**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

___

| | |
|---|---|
| **TRAVIS FARRIS,** ) | |
| ) | |
| Petitioner, ) | |
| v. ) | Case No. 10-CV-2009 |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |

## **OPINION**

On January 14, 2010, Petitioner, Travis Farris, filed a pro se Motion to Vacate, Set Aside or Correct Sentence (#1) pursuant to 28 U.S.C. § 2255. Petitioner claims that he received the ineffective assistance of counsel at the trial and pretrial stages of his case, as well as on appeal. On February 23, 2010, the Government filed its Response to Petitioner's Motion under 28 U.S.C. § 2255 (#5). On April 22, 2010, Petitioner filed his Reply (#7). This court has carefully considered the arguments raised by the parties and the record in this case. Following this careful and thorough review, Petitioner's Motion to Vacate, Set Aside or Correct Sentence (#1) is DENIED.

## FACTS

On April 6, 2006, in Case No. 06-20029, Petitioner was charged by Indictment with conspiracy to commit the armed robbery of a Ramada Inn and a U.S. Bank facility in Mattoon, Illinois, and mail fraud (Count 1), armed robbery of the U.S. Bank facility (Count 2), and a violation of the Hobbs Act in connection with the attempted robbery of the Ramada Inn (Count 3). On November 2, 2006, a Superseding Indictment was filed and added Count 4 which charged Petitioner with using and carrying a firearm during the bank robbery. Petitioner was originally represented by a court-appointed panel attorney, Harvey Welch. On October 16, 2006, Attorney Carol Dison entered her appearance in the case as retained counsel.

On November 16, 2006, following a four-day jury trial, Petitioner was found guilty of Counts

1, 2, and 4. He was found not guilty of Count 3. On March 13, 2007, a sentencing hearing was held and Petitioner was sentenced to a total of 147 months of imprisonment. Petitioner filed a Notice of Appeal, and Attorney Dison was appointed to represent him on appeal.

In his appeal, Petitioner challenged the sufficiency of the evidence against him and the reasonableness of his sentence. On July 9, 2008, the Seventh Circuit issued an Opinion and affirmed Petitioner's convictions and sentence. United States v. Farris, 532 F.3d 615 (7th Cir. 2008). The Seventh Circuit noted that, at trial, Jesse Matthew Coartney, Petitioner's friend since the third grade, testified that he and Petitioner were involved in a scheme to burn a vehicle owned by Petitioner to obtain the insurance proceeds and participated in a bank robbery. Farris, 532 F.3d at 616. Coartney had pleaded guilty and testified as part of a plea agreement. Farris, 532 F.3d at 616. The Seventh Circuit further noted that Coartney's testimony against Petitioner was corroborated by many other Government witnesses. Farris, 532 F.3d at 618. The Seventh Circuit noted that Petitioner testified in his own defense and denied any role in the burning of his vehicle. Farris, 532 F.3d at 618. The Seventh Circuit stated:

> Farris also presented an alibi for his involvement in the bank robbery, claiming that he attended an Army event at 10 AM the morning of the bank robbery, and that it would have been impossible for him to have also robbed the bank less than 20 minutes earlier. Farris's brother and cousin confirmed that they attended the event and arrived together with Farris.[1] The Army Sergeant in charge of the recruiting function that day was also called as a witness by Farris. He testified that these

---

[1] It was actually Petitioner's two brothers, James and Charles, who testified that they attended the event with Petitioner.

recruiting events typically started "at about 10:00," and that this particular event started sometime between 10:00 and 10:20 at the latest.

Farris, 532 F.3d at 618.

The Seventh Circuit rejected Petitioner's sufficiency of the evidence argument, first concluding that there was sufficient evidence for the jury to find that Petitioner burned the vehicle to obtain the insurance proceeds. Farris, 532 F.3d at 619. As far as the bank robbery, the Court noted that Petitioner was left to argue that Coartney's testimony "was incredible as a matter of law, meaning that it would have been 'physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all.'" Farris, 532 F.3d at 619, quoting United States v. Saulter, 60 F.3d 270, 275 (7th Cir. 1995). The Court stated:

> Farris tries to make such an argument, claiming that if he had in fact participated in the bank robbery, it would have been impossible for him to have also arrived at the Army recruiting event later that morning when he did. Even based on Farris's own time estimates, however, his claim fails. The bank's surveillance video reflects that the robbers were in the bank at 9:44 AM. Despite Farris's conclusory assertion that it would have taken him "well over 30 minutes" to arrive at the Army function, his formal time calculation is that travel time from the bank to the Army event would have been more than 28 minutes and 8 seconds. Using this latter figure, Farris would have arrived at the Army function some time after 10:12 AM. This fails to

3

> make Coartney's testimony incredible as a matter of law, since the Army Sergeant, who was Farris's own witness, testified that the event that morning could have begun as late as 10:20 AM.
>
> At trial, Farris was given the opportunity to present his own evidence and cross-examine and impeach Coartney's testimony. The fact that the jury ultimately credited Coartney's testimony is a matter that Farris improperly tries to re-litigate on appeal. The Government provided more than ample evidence for a jury to find Farris guilty of the charged crimes. While Coartney's testimony alone would have been sufficient to support the verdict, his testimony was also corroborated by eye-witness accounts of the robbery, the store owner who sold Farris the gun, and other witnesses.

Farris, 532 F.3d at 619-20. The Seventh Circuit also found that this court did not abuse its discretion in imposing a sentence of 147 months, which was the low end of the sentencing guidelines range. Farris, 532 F.3d at 620.

Petitioner filed a petition for a writ of certiorari to the United States Supreme Court. The petition was denied on January 12, 2009. As noted previously, Petitioner filed his Motion to Vacate, Set Aside or Correct Sentence (#1) pursuant to 28 U.S.C. § 2255 on January 14, 2010.

ANALYSIS

STANDARD

This court first notes that relief under 28 U.S.C. § 2255 is reserved for extraordinary situations. Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996), citing Brecht v. Abrahamson, 507 U.S. 619, 633-34 (1993). Accordingly, a petitioner may avail himself of relief under § 2255 only

if he "can demonstrate that there are flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude, or result in a complete miscarriage of justice." Boyer v. United States, 55 F.3d 296, 298 (7th Cir. 1995). Based upon this standard, and the record in this case, this court agrees with the Government that Petitioner has not included any claims which would warrant an evidentiary hearing or relief under 28 U.S.C. § 2255. This court notes that Petitioner was convicted following a jury trial at which the Government presented ample evidence of Petitioner's guilt. See Farris, 532 F.3d at 620.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner has claimed that he received the ineffective assistance of counsel at the trial and pretrial stages of his case and on appeal. To establish ineffective assistance of counsel, Petitioner must prove that his counsel performed in a deficient manner and that the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 687 (1984). As far as the first part of the Strickland test, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. 689, quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955). To even obtain an evidentiary hearing regarding his claim of ineffective assistance of counsel, Petitioner must present this court with evidence, such as sworn affidavits, to support his allegations of his counsel's deficient performance. See Galbraith v. United States, 313 F.3d 1001, 1009 (7th Cir. 2002), citing Prewitt, 83 F.3d at 819. Under Strickland, Petitioner must also show that his counsel's alleged errors actually prejudiced the defense. Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient

5

to undermine confidence in the outcome." Strickland, 466 U.S. at 694; Badelle v. Correll, 452 F.3d 648, 662 (7th Cir. 2006).

PETITIONER'S CLAIMS

1. ALIBI WITNESSES

Petitioner first claims that he received ineffective assistance of counsel in connection with his efforts to present an alibi defense to the bank robbery. Petitioner argued that his trial counsel failed to locate and interview alibi witnesses. This court agrees with the Government that there is no merit to this argument. At trial, defense counsel presented Petitioner's testimony that he could not have participated in the bank robbery as Coartney claimed because he attended an Army function at 10 a.m. the morning of the robbery and, therefore, could not have also robbed the bank less than 20 minutes earlier. To corroborate this testimony, counsel presented testimony from Petitioner's brothers, James and Charles, who confirmed Petitioner's testimony. James and Charles testified that that they attended the function with Petitioner and all arrived together in one vehicle. Counsel also presented the testimony of Sergeant Mark Smith, the Army recruiter in charge of the function, to substantiate Petitioner's claim. Smith, an apparently impartial witness, testified that Petitioner and his brothers arrived at the function no later than 10:20 a.m. The record therefore shows that Petitioner's trial counsel presented three witnesses in support of Petitioner's alibi testimony. The record shows that counsel also offered evidence of the travel time from the bank to the Army function in a further effort to convince the jury that it would have been impossible for Petitioner to have robbed the bank.

Petitioner has not provided this court with names of witnesses his trial counsel should have called instead or any affidavits setting out the testimony the other, unnamed, alibi witnesses could have provided. Based upon the record, this court concludes that Petitioner's counsel undertook a

thoroughly professional presentation of an alibi defense so that her decision not to call or seek out additional witnesses was a judgment call well within "the wide range of professionally competent assistance." See Badelle, 452 F.3d at 662-64, quoting Strickland, 466 U.S. at 690. This court agrees with the Government that the fact that the jury ultimately rejected the defense does not undermine the value of counsel's efforts or prove that counsel was ineffective.

This court notes that, in his Reply, Petitioner takes great umbrage with the requirement that he must provide affidavits to support his claims. He stated:

> It is the Government's view that the Petitioner must set forth in detail precisely what the witness would have testified to, had he been called as a witness. The "requirement" suggested by the Government is not particularly practical for a confined inmate who is not at liberty to locate the witnesses, interview them, and obtain an affidavit from them as to what their testimony would have been had they been called as witnesses in the trial of the case. This is a daunting task for a confined inmate who is not represented by counsel. Under the Government's scenario, a financially impoverished inmate, who lacks the resources to employ outside counsel, must make such a significant showing without the benefit of outside help. Such a task is not only daunting, but probably impossible, and cannot be the requirement, as, otherwise, most defendants could not make such a showing.

Petitioner is correct that most petitioners who challenge their convictions under § 2255 cannot make the required showing. However, as "daunting" as the task may be, courts do require affidavits or

other evidence in support of petitioners' claims. See Prewitt, 83 F.3d at 819. Mere unsupported allegations are not enough. Prewitt, 83 F.3d at 819. Therefore, it is not sufficient for a petitioner to say that there may have been better witnesses if his counsel had looked harder. See Badelle, 452 F.3d at 662-64. That kind of assertion is clearly insufficient to show that counsel performed in a deficient manner and he was prejudiced by the deficient performance.

This court notes that, in his Reply, Petitioner raised a new argument, that his counsel should have presented the testimony of Beverly Yarbrough. Petitioner attached a copy of a statement Yarbrough made to the FBI on November 18, 2004. Based upon this statement, Petitioner argued that his counsel should have presented Yarbrough's testimony because her testimony would have cast doubt on whether Petitioner was present with Coartney during the time frame when the vehicle was burned and would have cast doubt on the credibility of Coartney. Petitioner does not, and cannot, claim that Yarbrough's testimony would have bolstered his alibi defense in any way. This court concludes, based upon Yarbrough's statement, that her testimony, at best, would have contradicted a small portion of Coartney's testimony, a portion not directly related to the commission of the offenses charged. This court concludes that, contrary to Petitioner's assertion, Yarbrough cannot be considered a "crucial" witness. Petitioner cannot show that his counsel's decision not to call Yarbrough as a witness was anything other than trial strategy. Further, considering all of the evidence presented by the Government, this court cannot conclude that Petitioner was prejudiced by his counsel's failure to call Yarbrough as a witness. Petitioner clearly cannot show that there is a reasonable probability that the outcome of the trial would have been different if his counsel would have called Yarbrough to testify.

2. FEDERALLY INSURED STATUS OF BANK

Petitioner next claims that his counsel was ineffective for failing to sufficiently challenge the Government's evidence that the U.S. Bank was federally insured. Petitioner argued that his counsel should have moved to dismiss the indictment, should have challenged the Government's failure to provide adequate evidence at trial, and should have raised this issue on appeal. This court agrees with the Government that this argument is completely without merit. First, the record shows that the Government alleged in the indictment that the bank's deposits were insured by the Federal Deposit Insurance Corporation (FDIC) on the date of the robbery. Therefore, there was no basis for moving to dismiss the indictment. Also, contrary to Petitioner's claim, the Government presented ample evidence of the bank's insured status. The bank's branch manager testified that the deposits at the branch were insured by the FDIC. In addition, the Government introduced the FDIC certificate for the bank, and the branch manager testified that the certificate was in effect on the date of the bank robbery. Accordingly, the Government provided more than sufficient proof at trial of the insured status of the U.S. Bank. See United States v. Hampton, 464 F.3d 687, 688-89 (7th Cir. 2006). In fact, the Seventh Circuit recently noted that "in crimes against federally insured banks, . . . the parties normally stipulate that the bank is federally insured rather than requiring that this be proved by submitting the bank's FDIC certificate of deposit insurance to the court." United States v. Aviles-Solarzano, ___ F.3d ___, 2010 WL 4005050, at *4 (7th Cir. 2010). Although, normally, defense counsel stipulates regarding this issue, Petitioner's counsel did not and the Government therefore presented proof of the bank's federally insured status. Obviously, there was no basis for Petitioner's counsel to argue that the evidence was insufficient. In addition, there was absolutely no basis for Petitioner's counsel to raise this as an issue on appeal.

3. FAILURE TO REQUEST CONTINUANCE

9

Petitioner next claims that he was denied his constitutional right to a fair trial and meaningful participation in his own defense when his counsel failed to request a continuance of the trial due to the sudden death of Petitioner's father. Petitioner argued that he was suffering from acute depression and was rendered unable to assist his counsel in his defense. This court agrees with the Government that the record in this case refutes Petitioner's claim.

The record shows that Petitioner was arraigned before United States Magistrate Judge David G. Bernthal on September 5, 2006. At Petitioner's request, Judge Bernthal appointed counsel to represent him. Judge Bernthal scheduled a pretrial conference before this court on November 2, 2006, and a jury trial on November 13, 2006. On October 16, 2006, Attorney Dison entered her appearance on Petitioner's behalf as retained counsel. On the same day, Attorney Dison filed a motion to allow Petitioner, who was in custody, to have a private viewing of his father, who had died on October 14, 2006. Judge Bernthal granted the request.

On November 2, 2006, the grand jury returned a superseding indictment against Petitioner, which added Count 4, but was otherwise identical to the original indictment. At the pretrial conference later the same day, this court and the parties specifically discussed the possibility of the November 13, 2006, trial date. In Petitioner's presence, Attorney Dison stated, "My client quite obviously is interested in resolving this matter as quickly as possible. He has a wife and two young children." After further discussion between this court and counsel for the parties, all agreed to maintain the November 13, 2006, trial date. Petitioner made no objection to his counsel's comments nor did he request a delay of the trial. During the course of the trial, which began as scheduled on November 13, Petitioner never informed this court of any difficulty he was having in assisting in his defense due to his father's death. In fact, Petitioner participated in the trial and testified on his own behalf. Petitioner assured this court that his decision to testify was voluntary and was his own

independent choice and, during his testimony, never mentioned any difficulty in understanding or answering questions.

This court concludes that, contrary to Petitioner's claim in this regard, the record shows that he presented a strong defense in his own behalf and testified extensively in support of the defense. There is absolutely no support in the record for his claim that his attorney performed deficiently in not seeking a continuance or that he suffered any prejudice as a result.

### 4. BENEFITS PROVIDED FOR COARTNEY'S TESTIMONY

Petitioner's last claim is that his attorney was ineffective at trial and on appeal for failing to raise the issue of the Government's violation of 18 U.S.C. § 201(c)(2). Petitioner argued that the Government violated this section by offering Coartney a reduction in his sentence in exchange for his testimony against Petitioner. Petitioner claims his attorney should have objected and moved to suppress Coartney's testimony for the alleged violation. Petitioner has also claimed that his counsel should have moved to dismiss the bank robbery charge for Government misconduct and should have raised the issue on appeal.

This court agrees with the Government that Petitioner's whole argument is based upon a faulty premise. The Government does not violate § 201(c) by immunizing witnesses or entering into a cooperation agreement with them. Section 201(c) provides that "[w]hoever . . . directly or indirectly, gives, offers, or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court" is subject to a fine or imprisonment for not more than two years. 18 U.S.C. § 201(c)(2). However, the Seventh Circuit has clearly held that § 201(c) is not violated when the Government presents testimony from witnesses who stand to gain via immunity or lower sentences. United States v. Condon, 170 F.3d 687, 688-89 (7th Cir. 1999); United States v. Barrett,

505 F.2d 1091, 1100-03 (7th Cir. 1974). This is because "[f]orgoing criminal prosecution (or securing a lower sentence) is not a 'thing of value' within the meaning of § 201(c)(2)." Condon, 170 F.3d at 689-90. Accordingly, an argument that the testimony of cooperating witnesses who testified in exchange for leniency is a violation of 18 U.S.C. § 201(c)(2) "is without merit." United States v. Souffront, 338 F.3d 809, 827 (7th Cir. 2003). In Souffront, the Seventh Circuit stated, in regard to this argument, "we hope that future defendants will refrain from presenting such frivolous arguments supported by absolutely no authority and contrary to clearly-stated precedent." Souffront, 338 F.3d at 827.

Obviously, Petitioner was not denied the effective assistance of counsel when his attorney did not raise this meritless, frivolous argument before this court and on appeal.

IT IS THEREFORE ORDERED THAT:

(1) Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (#1) is DENIED.

(2) This case is terminated.

ENTERED this 15th day of October, 2010

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE